JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Caitlin Crockett | McCormick Taylor, Inc.<br>Patrick Guise |

**(b)** County of Residence of First Listed Plaintiff   Burlington County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian C. Farrell, Esq., Console Mattiacci Law, LLC
1525 Locust St., 9th Fl., Philadelphia, PA 19102 (215) 545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District (specify)
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e.
Brief description of cause:
Sex/ pregnancy discrimination; retaliation; hostile work environment.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
10/18/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Marlton, NJ _____

Address of Defendant: _____ Philadelphia, PA 19103 _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA 19103 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/18/2021 _____ _____ 319145

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Brian C. Farrell _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 10/18/2021 _____ _____ 319145

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Caitlin Crockett | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| McCormick Taylor, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                              ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| 10/18/2021 | | Plaintiff, Caitlin Crockett |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | farrell@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____  :
CAITLIN CROCKETT                                  :
                                                                   :          **CIV. A. NO.**
                                                 **Plaintiff,**    :
            **v.**                                                 :
                                                                   :
McCORMICK TAYLOR, INC.                       :
                                                                   :
      **and**                                                      :
                                                                   :
PATRICK GUISE                                        :
                                                                   :          **JURY TRIAL DEMANDED**
                                              **Defendants.**   :
_____  :

## COMPLAINT

### I.     INTRODUCTION

Plaintiff Caitlin Crockett ("Plaintiff"), through her undersigned counsel, files this Civil Action Complaint against her former employer, Defendant McCormick Taylor, Inc., ("Defendant McCormick") and Defendant Patrick Guise ("Defendant Guise"), the current Chief Visionary Officer of Defendant McCormick.

Plaintiff asserts claims of sex/ pregnancy discrimination, retaliation, hostile work environment, interference, and aiding and abetting against Defendants under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"); the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"); the Philadelphia Fair Practices Ordinance, as amended, Phila. Code §9-1100, *et seq.* ("PFPO"); and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"). Plaintiff seeks all available damages, including economic loss, compensatory damages for emotional

1

distress, liquidated damages, and punitive damages, along with all other relief under applicable federal and state law as this Court deems appropriate.

## II.   **PARTIES**

1.      Plaintiff Caitlin Crockett is an individual and a citizen of New Jersey. Plaintiff currently resides in Marlton, New Jersey.

2.      Defendant McCormick Taylor, Inc., is a Pennsylvania corporation with a principal place of business located at 1818 Market Street, 16th Floor, Philadelphia, Pennsylvania 19103.

3.      Defendant Patrick Guise is an individual currently employed by Defendant McCormick in the position of Chief Visionary Officer. Defendant Guise maintains a principal place of business at 1818 Market Street, 16th Floor, Philadelphia, Pennsylvania 19103.

4.      Defendant McCormick is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania.

5.      At all times material hereto, Plaintiff worked for Defendant McCormick at its Philadelphia headquarters located on Market Street.

6.      At all times material hereto, Defendant McCormick employed more than 15 employees.

7.      At all times material hereto, Defendant McCormick acted by and through its authorized agents, workers, or employees acting within the course and scope of their employment with Defendant McCormick and in furtherance of its business.

8.      At all times material hereto, Defendant McCormick served as an "Employer" under the statutes which form the basis of this matter.

9.     At all times material hereto, Plaintiff served as an "Employee" of Defendant McCormick under the statutes which form the basis of this matter.

## III.     JURISDICTION AND VENUE

10.     The causes of action set forth in this Complaint arise under the Title VII (Count I-II); the PHRA (Counts III-V); the PFPO (Counts VI-VIII); and the FMLA (Counts IX-X).

11.     The District Court has subject matter jurisdiction over Counts I-II (Title VII) and IX-X (FMLA) under 28 U.S.C. §1331.

12.     The District Court has supplemental jurisdiction over Counts III-V (PHRA) and Counts VI-VIII (PFPO) under 28 U.S.C. §1367.

13.     Defendants are subject to the personal jurisdiction of this Court because, among other things, the case arises out of or relates to Defendants' contacts with Pennsylvania, and the contacts of Defendants are continuous and systematic such that Defendants are considered at home in Pennsylvania.

14.     Venue is proper under 28 U.S.C. § 1391(b).

15.     On or about May 5, 2020, Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"). This Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached, incorporated herein and marked as Exhibit "1" is a true and correct copy of Plaintiff's PHRC Charge of Discrimination, with personal identifying information redacted.

16.     On or about July 21, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue for her Charge of Discrimination. Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of the Notice, with personal identifying

information redacted.

17.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

18.     Plaintiff was employed by Defendant McCormick from on or about July 7, 2014 until April 6, 2020, the date of her termination.

19.     Defendant McCormick is consulting firm based in Philadelphia. Defendant McCormick employs more than 400 people in the United States and specializes in energy services, water resources, civil design, planning, environmental studies, and communication for transportation development projects.

20.     At all times throughout her employment with Defendant McCormick, Plaintiff held the position of Talent Acquisition Manager.

21.     In this role, Plaintiff was responsible for finding, recruiting, hiring, and retaining qualified candidates for open positions with Defendant McCormick.

22.     Defendant Patrick Guise hired Plaintiff, having extended Plaintiff her job offer during their interview on or about July 7, 2014.

23.     Upon beginning employment with Defendant McCormick, Plaintiff reported to Dawn Bruno ("Bruno"), Vice President, Human Resources. Bruno reported to Defendant Guise and James Wiggans ("Wiggans"), Chief Executive Officer.

24.     Shortly after starting work, Plaintiff learned that Bruno (her direct supervisor) and Defendant Guise (her second level supervisor) were previously married and divorced. Plaintiff also learned that despite these circumstances, Defendant Guise and Bruno still maintained a close relationship.

25.     Throughout Plaintiff's employment, Defendants subjected her to an ongoing pattern of sex discrimination.

26.     For example, after only a few weeks on the job, Defendant Guise began making unwanted sexual advances toward Plaintiff, including, but not limited to:

a)     often stopping by Plaintiff's cubicle when she was alone; asking Plaintiff if was happy that he stopped by; if Plaintiff had been hoping she would see him that day; and if Plaintiff would like it if he emailed her later in the day;

b)     often standing uncomfortably close to Plaintiff in the office and during meetings; and

c)     often calling Plaintiff during work hours and asking her if she was alone.

27.     Plaintiff understood Defendant Guise's conduct to mean that he wanted to have a sexual relationship with her.

28.     Plaintiff did not welcome Defendant Guise's sexual advances.

29.     In or about mid-September 2014, Defendant Guise asked Plaintiff to meet with him alone in a vacant office during business hours.

30.     When Plaintiff entered the office, which locked when the door shut, Defendant Guise backed Plaintiff against the wall and a filing cabinet, cornering her. Defendant Guise then brought his face within about one inch of Plaintiff's face and stated that Plaintiff would "never not work" for him and that he would "not let [Plaintiff] go anywhere."

31.     Defendant Guise's actions placed Plaintiff in a state of shock and fear.

32.     Plaintiff rejected Defendant Guise's sexual advances.

33.     Thereafter, due to Plaintiff's rejection of his sexual advances, Defendant

Guise retaliated against Plaintiff by treating her in a hostile and dismissive manner; unjustly criticizing her performance; and often excluding her from meetings and work-related communications.

34.    Defendant Guise's pattern of retaliation against Plaintiff for rejecting his sexual advances continued throughout the rest of Plaintiff's employment with Defendant McCormick.

35.    In or about December 2014, Plaintiff complained about Defendant Guise's sexually inappropriate conduct to Tara Devine ("Devine"), Executive Assistant.

36.    In response, Devine told Plaintiff that she and other female employees had faced similar treatment by Defendant Guise. Devine further stated that Defendant Guise was a "known creep" with a reputation for sexually harassing female employees.

37.    In or about early 2015, Plaintiff complained about Defendant Guise's sexually inappropriate conduct to Michael Maholick ("Maholick"), Vice President.

38.    In response, Maholick stated he had "heard" that this behavior was occurring and "hoped" it would not continue. However, Maholick did not suggest any remedial or corrective action to address Plaintiff's complaint about Defendant Guise. Nor did Maholick, to Plaintiff's knowledge, conduct any investigation into the matter.

39.    In or about the spring of 2015, Plaintiff learned that Defendant Guise began dating a female employee named Shelly Drumheller, a Senior Accountant for Defendant McCormick.

40.    In or about September 2015, Plaintiff informed Bruno and Maholick that she was pregnant with her first child. Plaintiff also informed Bruno and Maholick that her due date was March 30, 2016.

41.     In or about October 2015, in a performance review meeting with Bruno and Maholick, Plaintiff received a positive performance review but was not given a salary increase. Plaintiff was told that the financial decisions were made by Defendant Guise.

42.     By January 2016, three of the four female employees reporting directly to Bruno (including Plaintiff) were pregnant.

43.     Bruno made several discriminatory comments about Plaintiff and her colleagues' pregnancies. Specifically:

a)     Bruno asked Plaintiff and her pregnant colleagues if they "planned to be pregnant at the same time" and why they "did this to [her]."

b)     Bruno stated that Plaintiff and her pregnant colleagues were "only allowed to have one baby in this department," and that "everyone knew that."

c)     Bruno stated that their pregnancies were "creating a problem for her" and would "cost" Defendant McCormick.

d)     Shortly before Plaintiff started maternity leave, Bruno and Defendant Guise told Plaintiff that they were using her maternity leave as a "trial run" to see if they could get their "money's worth out of [Plaintiff]."

44.     Plaintiff began her maternity leave on or about March 29, 2016.

45.     Plaintiff remained out of work on maternity leave until on or about June 18, 2016.

46.     When Plaintiff returned to work, Bruno continued her pattern of making discriminatory remarks about Plaintiff's pregnancy and maternity leave, including asking Plaintiff how her "vacation" was and commenting that Plaintiff was "lucky [she] got three months all to [herself.]"

47.     Bruno also exhibited a sex discriminatory bias against women with family responsibilities who applied for open positions with Defendant McCormick.

48.     For example, in early 2017, Plaintiff and Bruno interviewed a woman named Samantha Comdico for an open Recruiting Assistant position. During the interview, Comdico mentioned she was a single mother with a young child.

49.     Following the interview, Plaintiff told Bruno that she wanted to bring Comdico back for a second interview, but Bruno said no. When Plaintiff asked Bruno for an explanation, Bruno said it was "because [Comdico] was a single mother" and did not think that she "could be committed to the job."

50.     In response, Plaintiff protested the discriminatory nature of Bruno's decision, informing Bruno that Comdico's status as a single mother should have no bearing on whether she would move forward in the interview process. Nonetheless, Bruno instructed Plaintiff not to bring Comdico back for a second interview.

51.     Following Plaintiff's return from maternity leave, Bruno became increasingly hostile toward Plaintiff by, for example, frequently yelling and cursing at her in the workplace.

52.     Bruno did not treat male employees similarly.

53.     Plaintiff complained about Bruno's hostile, retaliatory, and discriminatory treatment of her.

54.     Defendant McCormick failed to stop Bruno's hostile, retaliatory, and discriminatory treatment of Plaintiff, which continued until Plaintiff's termination in 2020.

55.     In or about February 2019, Defendant McCormick transferred Plaintiff from the human resources department to the marketing department, where Plaintiff remained in

8

the role of Talent Acquisition Manager.

56.     Following the transfer, Plaintiff began reporting to Susie Ridenour ("Ridenour"), Vice President, Energy Services. Ridenour reported to Defendant Guise and CEO Wiggans.

57.     Following the transfer, Plaintiff complained to Ridenour about Bruno's hostile, retaliatory, and discriminatory treatment while she was pregnant and after she returned from maternity leave.

58.     In or about May 2019, in a performance review meeting with Defendant Guise and Ridenour, Plaintiff received a positive performance review but was given a salary increase that was only half of what Ridenour told Plaintiff she had recommended and fought for.

59.     On or about September 21, 2019, Plaintiff learned that she was pregnant with her second child. Plaintiff's due date was May 25, 2020.

60.     In or about late October 2019, Plaintiff informed Ridenour of her pregnancy and due date.

61.     On or about November 12, 2019, Plaintiff informed Defendant Guise of her pregnancy and due date.

62.     Shortly after Plaintiff informed Defendant Guise of her pregnancy, Ridenour told Plaintiff that Defendant Guise started to repeatedly criticize Plaintiff's performance for no valid reason.

63.     On or about February 18, 2020, in a meeting with Ridenour, Sam Parrotto ("Parrotto"), Life Coach, and Greg Filosa ("Filosa"), Vice President, Finance and Accounting, Plaintiff was told that she "need[ed] to work on repairing" her work

relationship with Bruno. Plaintiff was also told that, after Ridenour, Parrotto, and Filosa spoke with Bruno, they would meet with Bruno and Plaintiff together to discuss the same.

64.     The next day, in a meeting with Ridenour, Ridenour told Plaintiff that Defendant Guise had made disparaging comments about Plaintiff and was "unhappy" with her work performance. Ridenour further stated that she did not agree with Defendant Guise's criticisms of Plaintiff's work performance.

65.     On or about February 20, 2020, Ridenour told Plaintiff that she, Parrotto, and Filosa had met with Bruno and that the meeting "did not go well." According to Ridenour, Bruno "refused to meet" with Plaintiff.

66.     On or about February 26, 2020, Plaintiff met with Maholick and complained of sex discrimination and retaliation at the hands of Defendant Guise and Bruno. Plaintiff made it clear that she believed Defendant Guise and Bruno were targeting her because of her pregnancy and prior complaints about their discriminatory and retaliatory treatment of her.

67.     Later that day, Plaintiff met with Ridenour and voiced a similar complaint of discrimination about Defendant Guise and Bruno's treatment of her.

68.     On or about March 30, 2020, Plaintiff informed Ridenour that she intended to apply for FMLA leave and short-term disability in accordance with Defendant McCormick's policies regarding maternity leave. Plaintiff further informed Ridenour that she had an appointment with her doctor that coming Friday (April 3, 2020), during which Plaintiff's doctor would complete the medical certification component of her FMLA application.

69.     On or about April 6, 2020, Ridenour and Sandy Martin ("Martin"), Vice

President, Systems and Operations, terminated Plaintiff's employment due to an alleged lack of work.

70.     Later that day, Ridenour called Plaintiff and stated, "there was more to [Plaintiff's] termination" than lack of work, and that she was not the "final decision maker." Ridenour also apologized to Plaintiff and stated she was "stunned" by Plaintiff's termination.

71.     Defendant McCormick terminated Plaintiff's employment while Plaintiff was eight months pregnant.

72.     Plaintiff's sex/ pregnancy was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including, but not limited to, subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment.

73.     Plaintiff's family caregiving responsibilities were a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including, but not limited to, subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment.

74.     Plaintiff's complaints of sex discrimination and retaliation were a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, including, but not limited to, subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment.

75.     Plaintiff's rejections of Defendant Guise's sexual advances were a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, including, but not limited to, subjecting Plaintiff to a hostile work environment and terminating her employment.

76.     The retaliatory actions taken against Plaintiff after she engaged in protected activity would discourage a reasonable employee from complaining of discrimination and retaliation.

77.     Defendant McCormick failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discrimination and retaliation.

78.     The discriminatory and retaliatory conduct of Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

79.     Plaintiff's stated intent to apply for FMLA leave was a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, including, but not limited to, terminating Plaintiff's employment.

80.     As a direct and proximate result of Defendants' discrimination and retaliation, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

81.     Defendant McCormick acted with malice and/or reckless indifference to Plaintiff's protected rights, which warrants the imposition of punitive damages.

82.     Defendant Guise aided, abetted, incited, compelled and/or coerced the discrimination and retaliation to which Plaintiff was subjected during her employment with

Defendant McCormick.

### COUNT I - Title VII
### Plaintiff v. Defendant McCormick Taylor, Inc.
### (Sex Discrimination - Disparate Treatment and Hostile Work Environment)

83.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

84.     Plaintiff's sex/ pregnancy was a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

85.     Plaintiff's family caregiving responsibilities were a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

86.     By committing the foregoing acts of discrimination against Plaintiff, including subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment, Defendant McCormick has violated Title VII.

87.     These violations were intentional and warrant the imposition of punitive damages.

88.     As a direct and proximate result of Defendant McCormick's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

89.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant McCormick's discriminatory acts unless and until this Court grants the relief requested herein.

### COUNT II - Title VII
### Plaintiff v. Defendant McCormick Taylor, Inc.
### (Retaliation and Retaliatory Hostile Work Environment)

90.     Plaintiff incorporates the paragraphs above as if set forth herein in their

entirety.

91.     Plaintiff's complaints of sex discrimination and/or retaliation were a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

92.     By committing the foregoing acts of retaliation against Plaintiff, including subjecting Plaintiff to a retaliatory hostile work environment and terminating Plaintiff's employment, Defendant McCormick has violated Title VII.

93.     These violations were intentional and warrant the imposition of punitive damages.

94.     As a direct and proximate result of Defendant McCormick's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

95.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant McCormick's retaliatory acts unless and until this Court grants the relief requested herein.

## <u>COUNT III - PHRA</u>
**Plaintiff v. Defendant McCormick Taylor, Inc.**
**(Sex Discrimination - Disparate Treatment and Hostile Work Environment)**

96.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

97.     Plaintiff's sex/ pregnancy was a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

98.     Plaintiff's family caregiving responsibilities were a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

14

99.     By committing the foregoing acts of discrimination against Plaintiff, including subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment, Defendant McCormick has violated the PHRA.

100.    As a direct and proximate result of Defendant McCormick's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

101.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant McCormick's discriminatory acts unless and until this Court grants the relief requested herein.

**COUNT IV - PHRA**
**Plaintiff v. Defendant McCormick Taylor, Inc.**
**(Retaliation and Retaliatory Hostile Work Environment)**

102.    Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

103.    Plaintiff's complaints of sex discrimination and/or retaliation were a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

104.    By committing the foregoing acts of retaliation against Plaintiff, including subjecting Plaintiff to a retaliatory hostile work environment and terminating Plaintiff's employment, Defendant McCormick has violated the PHRA.

105.    These violations were intentional and warrant the imposition of punitive damages.

106.    As a direct and proximate result of Defendant McCormick's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred

attorneys' fees and costs.

107.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant McCormick's retaliatory acts unless and until this Court grants the relief requested herein.

**COUNT V - PHRA**
**Plaintiff v. Defendant Patrick Guise**
**(Aiding and Abetting)**

108.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

109.     Defendant Guise willfully and knowingly aided, abetted, incited, compelled and/or coerced Defendant McCormick in the discrimination and retaliation to which Plaintiff was subjected.

110.     Defendant Guise knowingly gave substantial assistance and/or encouragement to the unlawful acts of discrimination and retaliation of Defendant McCormick towards Plaintiff.

111.     Defendant Guise, by committing the foregoing acts of discrimination and retaliation, has violated the PHRA.

112.     These violations were intentional and willful.

113.     As a direct and proximate result of Defendant Guise's violations of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

114.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Guise's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

**COUNT VI - PFPO**
**Plaintiff v. Defendant McCormick Taylor, Inc.**
**(Sex Discrimination - Disparate Treatment and Hostile Work Environment)**

115.    Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

116.    Plaintiff's sex/ pregnancy was a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

117.    Plaintiff's family caregiving responsibilities were a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

118.    By committing the foregoing acts of discrimination against Plaintiff, including subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment, Defendant McCormick has violated the PFPO.

119.    These violations were intentional and warrant the imposition of punitive damages.

120.    As a direct and proximate result of Defendant McCormick's violation of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

121.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant McCormick's discriminatory acts unless and until this Court grants the relief requested herein.

**COUNT VII - PFPO**
**Plaintiff v. Defendant McCormick Taylor, Inc.**
**(Retaliation and Retaliatory Hostile Work Environment)**

122.    Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

123.    Plaintiff's complaints of sex discrimination and/or retaliation were a motivating and/or determinative factor in connection with Defendant McCormick's treatment of her.

124.    By committing the foregoing acts of retaliation against Plaintiff, including subjecting Plaintiff to a retaliatory hostile work environment and terminating Plaintiff's employment, Defendant McCormick has violated the PFPO.

125.    These violations were intentional and warrant the imposition of punitive damages.

126.    As a direct and proximate result of Defendant McCormick's violation of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

127.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant McCormick's retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT VIII - PFPO
### Plaintiff v. Defendant Patrick Guise
### (Aiding and Abetting)

128.    Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

129.    Defendant Guise willfully and knowingly aided, abetted, incited, compelled and/or coerced Defendant McCormick in the discrimination and retaliation to which Plaintiff was subjected.

130.    Defendant Guise knowingly gave substantial assistance and/or encouragement to the unlawful acts of discrimination and retaliation of Defendant

McCormick towards Plaintiff.

131.    Defendant Guise, by committing the foregoing acts of discrimination and retaliation, Defendant Guise has violated the PFPO.

132.    These violations were intentional and willful.

133.    As a direct and proximate result of Defendant Guise's violations of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein.

134.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Guise's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

### COUNT IX - FMLA
### Plaintiff v. Defendant McCormick Taylor, Inc.
### (Retaliation)

135.    Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

136.    By committing the foregoing acts of retaliation based on Plaintiff's request for FMLA-protected leave, Defendant McCormick has violated the FMLA.

137.    Defendant McCormick knew and/or showed reckless disregard as to whether the foregoing acts were in violation of the FMLA, thereby warranting the imposition of liquidated damages.

138.    As a direct and proximate result of Defendant McCormick's violation of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

139.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant McCormick's violations of the FMLA unless

and until this Court grants the relief requested herein.

## COUNT X - FMLA
### Plaintiff v. Defendant McCormick Taylor, Inc.
### (Interference)

140.    Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

141.    Plaintiff was eligible for FMLA leave at the time of her application for same.

142.    By terminating Plaintiff's employment during the FMLA application process, Defendant McCormick unlawfully interfered with Plaintiff's rights under the FMLA.

143.    Defendant McCormick knew and/or showed reckless disregard as to whether the foregoing acts were in violation of the FMLA, thereby warranting the imposition of liquidated damages.

144.    As a direct and proximate result of Defendant McCormick's violation of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

145.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant McCormick's violations of the FMLA unless and until this Court grants the relief requested herein.

## RELIEF

**WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant her the following relief by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)     declaring the acts and practices complained of herein to be in violation of the PFPO;

(d)     declaring the acts and practices complained of herein to be in violation of the FMLA;

(e)     enjoining and permanently restraining the violations alleged herein;

(f)     entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(g)     awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(h)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(i)     awarding punitive damages to Plaintiff;

(j)     awarding liquidated damages to Plaintiff under the FMLA;

(k)     awarding Plaintiff such other damages as are appropriate under Title VII, the PHRA, the PFPO, and the FMLA;

(l)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(m)    granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on each of the Counts in this Complaint.

**CONSOLE MATTIACCI LAW LLC**

/s/ Brian C. Farrell
Brian C. Farrell, Esquire
Console Mattiacci Law LLC
1525 Locust Street, Ninth Floor
Philadelphia, PA 19102
(215) 545-7676
farrell@consolelaw.com

Date: October 18, 2021                    Attorney for Plaintiff, Caitlin Crockett

22

# Exhibit "1"

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |
|---|---|
| Caitlin Crockett, | : |
| Complainant | : |
|  | : |
| v. | : PHRC Case No. 201903957 |
|  | : |
| McCormick Taylor, Inc.; McCormick Taylor Associates, | : EEOC No. 17F202160026 |
| Respondent | : |
|  | : |

## COMPLAINT

### JURISDICTION

1.  Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

### PARTIES

2.  The Complainant herein is:

    Caitlin Crockett

    

3.  The Respondent herein is:

    McCormick Taylor, Inc.
    1818 Market Street, 16th Floor
    Philadelphia, PA 19103

    McCormick Taylor Associates
    1818 Market Street, 16th Floor
    Philadelphia, PA 19103

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

| Received |
| --- |
| MAY 0 5 2020 |
| PA Human Relations Commission Philadelphia Regional Office |

## COMPLAINT

| | |
| --- | --- |
| COMPLAINANT: | : |
| CAITLIN CROCKETT | : |
| v. | : |
| RESPONDENT: | : |
| MCCORMICK TAYLOR, INC. | : |
| and | : |
| MCCORMICK TAYLOR ASSOCIATES | : |
| and | : |
| PATRICK GUISE, aider and abettor | : |

Docket No. 2019 03957

1. The Complainant herein is:

   Name:    Caitlin Crockett

   Address:    ███████████████

2. The Respondent herein is:

   Names:    McCormick Taylor, Inc. and McCormick Taylor Associates (collectively, "Respondent Company"); Patrick Guise, aider and abettor ("Respondent Guise")

   Address:    1818 Market Street, 16th Floor
   Philadelphia, PA 19103

3. I, Caitlin Crockett, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and pregnancy, and unlawful retaliation because of my complaints of sex and pregnancy discrimination, as set forth below.

<u>Discrimination and Retaliation</u>

A. I specifically allege:

[1]     I began working at Respondent on or about July 7, 2014.

[2]     I last held the position of Talent Acquisition Manager.

[3]     I consistently performed my job duties in a highly competent manner.

[4]     I last reported to Susie Ridenour (female), Vice President, Energy Services. Ridenour reported to Respondent Patrick Guise (male), Co-Owner and Chief Visionary Officer, and James Wiggans (male), Co-Owner and Chief Executive Officer.

[5]     I was hired by Respondent Guise, and he offered me the position during my interview with him.

[6]     After I was hired, I reported to Dawn Bruno (female), Vice President, Human Resources. Bruno reported to Respondent Guise and Wiggans.

[7]     Bruno told me that she and Respondent Guise were previously married, and still had a close personal relationship.

[8]     In or about August 2014, Respondent Guise began engaging in comments and conduct toward me of an inappropriate nature.

[9]     I understood that Respondent Guise wanted to have a sexual relationship with me.

[10]    Respondent Guise frequently stopped by my cubicle, when I was alone, and asked me if was happy that he stopped by, if I had been hoping I would see him that day, and if I would like it if he emailed me later that day.

[11]    Respondent Guise frequently stood very close to me and positioned himself next to me in meetings.

[12]    Respondent Guise frequently called me and asked me if I was alone.

[13]    Respondent Guise instructed me to use the word "absolutely" to requests he made.

[14]    I understood that Respondent Guise wanted to have a sexual relationship with me and that I would get farther at Respondent Company if I engaged in a sexual relationship with him.

[15]    In or about mid-September 2014, Respondent Guise asked me to meet with him alone in an office, which locked when the door shut, backed me against the wall and a filing cabinet, and brought his face within about one inch of my face. He stated that I would never not work for him and that he would not let me go anywhere. I had a state of shock and fear on my face and Respondent Guise backed away.

[16]    I rejected Respondent Guise's sexual advance.

[17]    After I rejected Respondent Guise's comments and conduct of a sexual nature, Respondent Guise treated me in a hostile and dismissive manner, unjustly criticized my performance, ignored me, and excluded me from meetings and communications related to my job duties.

[18]    I found Respondent Guise's comments and conduct to be offensive, based on my sex, and contributing to the hostile work environment to which I was subjected.

[19]     In or about October 2014, during a work conference, Ted Foglietta (male), Director, stated that everyone wanted to work at Respondent Company because Respondent Company had the hottest women.  When he said this, he gestured to Beth McDonald (female), Proposal Coordinator, and me, and then said, "See what I mean? M, T, and A." He pointed to me when he said the letter "T," and McDonald when he said the letter "A." I understood him to be indicating that "T" stood for "tits" and "A" stood for "ass."

[20]     Throughout my employment with Respondent Company, several male employees told me that they were surprised to learn that I knew how to competently do my job, and that they had assumed I had been hired by Respondent Guise because of my appearance.

[21]     In or about December 2014, I complained to Tara Devine (female), Executive Assistant, of Respondent Guise's comments and conduct of an inappropriate nature toward me, which made me feel uncomfortable.  Devine told me that she and other female employees have been subjected to similar treatment by Respondent Guise.  Devine stated that Respondent Guise is a "known creep." Devine told me that Respondent Guise offered Devine $500 to buy herself new clothes and shoes and was cornered by Respondent Guise.

[22]     I heard of other female employees, including Jo Ann Rue Moore (female), Marketing Assistant, and Alicia Sinha-Thomas (female), Graphic Designer, who have commented that Respondent Guise sexually harassed female employees.

[23]     In or about early 2015, I complained to Michael Maholick (male), Vice President, of Respondent Guise's comments and conduct of an inappropriate nature toward me, which made me feel uncomfortable.  Maholick stated that he had heard that this behavior was occurring and hoped it would not continue.

[24]     Respondent failed to remedy or prevent the sex discrimination to which I was subjected.

[25]     Respondent failed to investigate my complaints of sex discrimination.

[26]     In or about early 2015, Respondent Guise began dating Shelly Drumheller (female), Senior Accountant.

[27]     In or about September 2015, I informed Bruno, my supervisor at the time, and Maholick, that I was pregnant and expecting my first child. I stated that my due date was March 30, 2016.

[28]     In or about October 2015, in a performance review meeting with Bruno and Maholick, I received a positive performance review but was not given a salary increase. I was told that the financial decisions were made by Respondent Guise. I was told that my compensation would be revisited within six (6) months. It was not.

[29]     Respondents denied me a salary increase because of my sex and/or my pregnancy and/or my sex discrimination complaints and/or my rejection of Respondent Guise's sexual advances and/or my anticipated maternity leave.

[30]     In or about January 2016, three (3) out of the four (4) female employees in the Human Resources Department under Bruno were pregnant.

[31]     Bruno made comments regarding our pregnancies, including asking if we planned to be pregnant at the same, asking why we did this to her, stating that we were only allowed to have one baby in this department and that everyone knew that, stating that our being pregnant was creating a problem for her, remarking on the cost that Respondent Company would incur as a result of our being pregnant, delivering, and being on maternity leave at the same time, asking how she was supposed to handle this, and remarking that we were "huge."

[32]     Before I went out on maternity leave, Bruno and Respondent Guise told me that they were using my maternity leave as a "trial run" to see if they would be able to get their "money's worth out of [me]."

[33]     On or about March 29, 2016, I went out of work on maternity leave.

[34]     From March 29, 2016 to June 18, 2016, I was out of work on maternity leave.

[35]     On or about June 18, 2016, I returned to work from my maternity leave.

[36]     After I returned to work from maternity leave, Bruno frequently made comments about my maternity leave, including, when referring to my maternity leave, asking how my "vacation" was, and remarking that I was "lucky" that I got three (3) months all to myself.

[37]     In or about August 2016, in a performance review meeting with Bruno and Sam Parrotto (female), Life Coach, I received a positive performance review but was given only a portion of the salary increase I had anticipated.  I was told that my compensation would be revisited within six (6) months.

[38]     Respondents denied me a portion of the salary increase I had anticipated because of my sex and/or my pregnancy and/or my sex discrimination complaints and/or my rejection of Respondent Guise's sexual advances and/or my having taken maternity leave.

[39]     In or about early 2017, when I was seeking candidates for a Recruiting Assistant position that would report to me, Bruno and I interviewed Samantha Comdico (female).  During the interview, Comdico mentioned that she was a single mother with a young child.  Bruno then asked Comdico questions regarding her status as a single mother, including what kind of hours she could work being a single mother, what she would do if her child was

sick, and whether she had "back up." Following the interview, when I told Bruno that I wanted to bring Comdico back for a second interview, Bruno stated that she did not want to bring Comdico back for a second interview because she was a single mother and Bruno did not think that she could be committed to the job. I told Bruno that I disagreed with that decision, and complained that Comdico's status as a single mother should have no bearing on whether she should move forward in the interview process or whether she could commit to the job. Bruno instructed me not to bring back Comdico for a second interview because she sensed that Comdico had "an attitude."

[40]    Bruno became increasingly hostile and dismissive toward me, and treated me differently and worse than she treated male and/or noncomplaining employees and/or employees who had not recently been pregnant or taken maternity leave.

[41]    Bruno yelled at me, cursed at me, and hung up the phone on me, which I did not observe her doing to male and/or noncomplaining employees and/or employees who had not recently been pregnant or taken maternity leave.

[42]    I repeatedly complained to Parrotto of Bruno's hostile and dismissive treatment toward me while I was pregnant and after I returned from maternity leave. Parrotto told me that I "evoke[d]" Bruno's treatment of me.

[43]    In 2017, I received a positive performance review but was given no bonus.

[44]    Respondents denied me a bonus because of my sex and/or my pregnancy and/or my sex and pregnancy discrimination complaints and/or my rejection of Respondent Guise's sexual advances and/or my having taken maternity leave.

[45]    In 2018, I received a positive performance review but was given no bonus.

[46]     Respondents denied me a bonus because of my sex and/or my pregnancy and/or my sex and pregnancy discrimination complaints and/or my rejection of Respondent Guise's sexual advances and/or my having taken maternity leave.

[47]     In or about February 2019, I was transferred from the Human Resources Department to the Marketing Department and began reporting to Ridenour.

[48]     I repeatedly complained to Ridenour of Bruno's hostile and dismissive treatment toward me while I was pregnant and after I returned from maternity leave.

[49]     In May 2019, in a performance review meeting with Respondent Guise and Ridenour, I received a positive performance review but was given a salary increase that was only half of what Ridenour told me she had recommended and fought for. Ridenour told me that Respondent Guise denied the salary increase she had requested for me and that, when she proposed giving me a bonus, Respondent Guise denied that, too. Ridenour told me that she and other leaders at Respondent Company were happy with my performance.

[50]     Respondents denied me a full salary increase and denied me a bonus because of my sex and/or my pregnancy and/or my sex and pregnancy discrimination complaints and/or my rejection of Respondent Guise's sexual advances and/or my having taken maternity leave.

[51]     On or about September 21, 2019, I learned that I was pregnant and due on May 25, 2020.

[52]     In or about late October 2019, I informed Ridenour that I was pregnant and due on May 25, 2020.

[53]     On November 12, 2019, I informed Respondent Guise that I was pregnant.

[54] After I informed Respondent Guise of my pregnancy, Ridenour told me that he was constantly criticizing my performance.

[55] After I informed Respondent Guise of my pregnancy, my regularly scheduled meetings with him and Ridenour stopped.

[56] On February 12, 2020, in an email to Ridenour and Laura Senske (female). Benefits Coordinator, I submitted my completed maternity leave request form, requesting to begin maternity leave on or about May 25, 2020 and return to work on or about August 14, 2020.

[57] On February 18, 2020, in a meeting with Ridenour, Parrotto, and Greg Filosa (male), Vice President – Finance and Accounting, I was told that I needed to work on repairing my relationship with Bruno. I was told that, after they spoke with Bruno, they would meet with Bruno and me together.

[58] On February 19, 2020, in a meeting with Ridenour, she told me that Respondent Guise had made disparaging comments about me and was unhappy with my performance, and stated that she did not understand where the criticisms were coming from.

[59] On or about February 20, 2020, Ridenour told me that she, Parrotto, and Filosa had met with Bruno, that the meeting did not go well, and that Bruno refused to meet with me so the joint meeting would not be happening.

[60] Respondents treated me differently and worse, and in a more hostile and dismissive manner, than male and/or non-pregnant female and/or noncomplaining employees and/or employees who were not anticipating taking maternity leave were treated and/or employees who had not rejected Respondent Guise's sexual advances.

[61]     On February 26, 2020, in a meeting with Ridenour, I complained of sex and pregnancy discrimination. I complained that I felt I was being discriminated against because of my current pregnancy and that I felt that I had been discriminated against in connection with my last pregnancy. Ridenour stated that she strongly disagreed with Respondent Guise regarding my performance. She stated that she had never been told "no" by Respondent Guise before but that she had heard it from him a lot this year and every time it has something to do with me. She told me that she would speak with Maholick regarding my complaints.

[62]     Respondent Company failed to remedy or prevent the sex and pregnancy discrimination and retaliation to which I was subjected.

[63]     Respondent Company failed to investigate my complaints of sex and pregnancy discrimination and retaliation.

[64]     On March 6, 2020, in an email from Lauren Lepiane (female), Benefits Assistant, I received approval for my maternity leave. The request form I had completed was approved and signed by Bruno.

[65]     On March 27, 2020, in a phone call with Ridenour, she told me that she spoke with Filosa regarding a complaint that Bruno had made against me. Ridenour told me that Bruno complained that I had forwarded an email to Senske, instead of directly to Bruno. Ridenour was crying as she told me this, stating that she could not take the drama with Bruno any longer.

[66]     On March 30, 2020, in a phone call with Ridenour, I told her that I intended to complete my FMLA and short term disability leave paperwork the next time I saw my doctor, which was later that week. Ridenour instructed me to work with Senske to find out what I would be entitled to if I was partially or completely furloughed.

[67]     On March 30, 2020, in a phone call with Senske, following the above phone call with Ridenour, I asked her about FMLA, short term disability benefits, and Respondent Company's maternity leave policy. I sent a summary of my conversation with Senske to Ridenour.

[68]     On April 3, 2020, in a phone call with Senske, she told me that I would not be entitled to FMLA, short term disability, or maternity leave if I am furloughed, but that Respondent Company had some discretion to provide these benefits and we could address that if I was furloughed. I sent a summary of my conversation with Senske to Ridenour.

[69]     On April 6, 2020, in a phone call with Ridenour and Sandy Martin (female), Vice President, Systems and Operations, I was terminated, effective immediately. The stated reason was lack of work.

[70]     Respondent terminated my employment because of my sex, pregnancy, sex and pregnancy discrimination complaints, rejections of Respondent Guise's sexual advances and/or anticipated maternity leave.

[71]     On April 6, 2020, in a phone call with Ridenour, after I was informed of my termination, she said that she felt sad and did not think that this was going to happen. I told her that this was horrible timing, as I was very pregnant. She told me that she believed that there was more to my termination than lack of work, and that she was not the final decision-maker. She told me that I was originally supposed to be furloughed, instead of terminated, but that there was no way Respondent Company would have brought me back to work, and she would not have had the control to be able to bring me back to work. She stated that she had not been successful in getting me what I wanted and needed for my career, and was sorry about that, and that things were not going in the right direction since approximately November 2019. Ridenour stated that

Respondent Guise told her that he did not want to do a performance review with me before my termination, although Ridenour had suggested it, and that, despite Ridenour not knowing why, Respondent Guise would not have given me a raise this year if I had remained employed. She stated that I was not the only one who was stunned by my termination, and that she would miss me and miss working with me.

[72] Respondents subjected me to a hostile work environment because of my sex, pregnancy, sex and pregnancy discrimination complaints, rejections of Respondent Guise's sexual advances, maternity leave and/or anticipated maternity leave, and the hostile work environment constitutes a continuing violation.

[73] I had no disciplinary or performance issues throughout my employment.

[74] I had no opportunity to remain employed with Respondent Company.

[75] I was approximately eight (8) months pregnant when Respondents terminated my employment.

[76] Respondent Company has assigned my job duties to Lindsay Haverdink (female), Recruiting Assistant. I was more qualified to perform my job duties than the noncomplaining, nonpregnant employee who had not rejected Respondent Guise's sexual advances and who was not anticipating taking maternity leave.

[77] Senske (female) and I were the only employees who were terminated effective April 6, 2020.

[78] Senske told me that she was terminated because of her communications with me regarding my maternity leave and benefits.

[79] Devine told me that Respondent Guise commented that he had lost trust in me.

[80]     Respondents have a reputation for sexually harassing female employees.

[81]     Respondents have a pattern and practice of discriminating against female and/or pregnant employees.

[82]     Respondents did not take any action to remedy or prevent the sex and pregnancy discrimination and retaliation to which I was subjected.

[83]     Respondents' sex and pregnancy discriminatory and retaliatory conduct toward me has caused me emotional distress.

[84]     Respondents' comments and conduct evidence a bias against female and/or pregnant employees and/or employees who engage in protected activity.

[85]     Respondent Company has an underrepresentation of female employees in high level positions. For example, only six (6) out of the eighteen (18) employees on Respondent's Leadership Team are female.

[86]     I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent Company who are female, and have been discriminated against based on sex and/or pregnancy, in connection with the terms and conditions of their employment, including being subjected to a hostile work environment, failure to promote, demotion, compensation, and/or termination.

B. Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and pregnancy, and retaliated against me for complaining of sex and pregnancy discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as

amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

      X          Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):   (a); (d); (e)

      ____       Section 5.1 Subsection(s) _____

      ____       Section 5.2 Subsection(s) _____

      ____       Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

      X          **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant seeks that Respondent be required to:

      (a) Make the Complainant whole.

      (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

      (c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

      (d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

      (e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

_5/5/2020_
(Date Signed)

_Caitlin Crockett_
(Signature)   Caitlin Crockett

# Exhibit "2"

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Caitlin Crockett** | From: | **Philadelphia District Office** |
|---|---|---|---|
| | ▓▓▓▓▓▓▓▓▓▓▓▓ | | **801 Market Street** |
| | | | **Suite 1000** |
| | | | **Philadelphia, PA 19107** |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Damon A. Johnson,** | |
| **17F-2021-60026** | **State & Local Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Dana R Hutter*                                July 21, 2021

Enclosures(s)                         **Dana R. Hutter,**                     *(Date Issued)*
**Deputy Director**

cc:

| **For Respondent:** | **For Charging Party** |
|---|---|
| **Human Resources** | |
| **MCCORMICK TAYLOR, INC.; MCCORMICK TAYLOR** | **Brian C. Farrell** |
| **ASSOCIATES** | **Console Mattiacci Law, LLC** |
| **1818 Market Street, 16th Floor** | **Via email: farrell@consolelaw.com** |
| **Philadelphia, PA 19103** | |